**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **THOMAS C.A. SCHLUMBRECHT, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 22-2111** |
| **ANDREW V. TOPEL, ET AL.** | **SECTION: "P" (1)** |

## ORDER AND REASONS

Before the Court is the Motion for Summary Judgment filed by Defendants Andrew V. Topel and Atlassoftwareservices (Atlas).[1] Plaintiffs Thomas C.A. Schlumbrecht and National Table Games Corporation (NTG) filed an opposition to the motion,[2] and the Defendants filed a reply in support of their motion.[3] Having considered the motion, the parties' briefing, the oral argument, the record, and the applicable law, the Court **GRANTS** the motion for summary judgment for the following reasons.

## I.    BACKGROUND

On August 2, 2013, Plaintiff National Table Games ("NTG") contracted with Topel to design and build a table games progressive system targeted for use in casinos.[4] The contract provided that NTG was hiring Topel "until all work for the system is built and performing to specification to pass all state compliance laws along with testing requirements and full functionality of the entire system."[5] Topel completed the stand-alone version of the system on

---

[1] R. Doc. 101.
[2] R. Doc. 107.
[3] R. Doc. 108.
[4] R. Doc. 1 at 8.
[5] R. Doc. 107-1 at 4.

March 30, 2014,[6] and the system passed state compliance requirements on May 14, 2014.[7] The system was installed at Treasure Chest Casino in August 2015 for a field trial, which it passed in October of that year.[8]

For the next seven years, Topel continued to work with NTG to maintain, service, update, change, and modify the software for the system.[9] According to Plaintiffs' statement of uncontested facts, the system was successfully installed, operational, and generating profits in the Magnolia Bluffs Casino starting in November 2017, in Ameristar Casino starting in August 2020, and in Waterview Casino starting in February 2021.[10] In March 2022, the parties discussed entering into an agreement with MSC Gaming for national distribution of the system and into an agreement with Pegasus Gaming for international distribution of the system.[11] In conjunction with these discussions, Topel proposed a new partnership agreement to Schlumbrecht and NTG in May 2022.[12] No agreement came to fruition.[13] Plaintiffs instead terminated their relationship with Topel and Atlas and instigated this lawsuit.[14]

Plaintiffs sued Topel and Atlas, asserting claims for: (1) breach of contract; (2) conversion; (3) violations of the Louisiana Unfair Trade Practices Act; (4) fraud; (5) detrimental reliance; (6) unjust enrichment; and (7) negligent misrepresentation.[15] Defendants moved for summary judgment.[16] Defendants assert that Plaintiffs fail to meet their

---

[6] *Id.* at 4-5.
[7] *Id.* at 5; R. Doc. 101-6.
[8] R. Doc. 107-1, at 5.
[9] R. Doc. 107 at 11; R. Doc. 107-1, at 6.
[10] R. Doc. 107-1 at 7.
[11] *Id.* at 9.
[12] *Id.*
[13] *Id.* at 10.
[14] *Id.*
[15] R. Doc. 1.
[16] R. Doc. 101.

burden of proof for each cause of action and have failed to present any competent summary judgment evidence of damages.[17]

## II.     LEGAL STANDARD

Summary judgment is proper when the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[18] When the dispositive issue raised in a motion for summary judgment is one on which the nonmovant will bear the burden of proof at trial, the movant may satisfy its burden by pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim.[19] The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing a genuine dispute of material fact exists.[20] The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for resolution.[21]

A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under the applicable law in the case.[22] A dispute about a material fact is "genuine" if it is one upon which a reasonable jury could return a verdict for the nonmoving party based upon the jury's resolution of the factual issue.[23] "When assessing whether a dispute

---

[17] *Id.*
[18] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).
[19] *See Celotex*, 477 U.S. at 325.
[20] *See id.* at 324.
[21] *See, e.g., id.*; *Little*, 37 F.3d at 1075 (quoting *Celotex*, 477 U.S. at 322) ("Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'").
[22] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[23] *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956 (5th Cir. 1993).

as to any material fact exists, [the Court] consider[s] all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[24]

## III.   LAW AND ANALYSIS

### A.  Breach of Contract

Under Louisiana law, a breach of contract claim requires plaintiff to prove three elements: 1) a contract, 2) breach, and 3) damages suffered because of the breach.[25] Here, the undisputed facts establish that an agreement existed between Plaintiffs and Defendants under which Topel agreed to work for $90.00/hour until the gaming system was built "and performing to specification to pass all state compliance laws along with testing requirements and full functionality of the entire system."[26] Defendants and Plaintiffs dispute whether there remain genuine issues of material fact as to the two remaining elements: breach and damages.

### 1.  Breach

Plaintiffs assert that Topel breached the Employment Agreement in three ways: 1) in failing to build a system that performed "to specification" with "full functionality,"[27] 2) in failing to give Plaintiffs the source code, 3) and in trying to sell the system to third parties.

Plaintiffs fail to carry their burden to show a genuine issue of material fact as to whether Topel failed to build a system to specification with full functionality. Plaintiffs argue that "[e]vidence has been provided of [the] terms being breached."[28] At the summary judgment stage, however, the non-movant must point to specific evidence in the record and explain how

---

[24] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins.*, 530 F.3d 395, 398–99 (5th Cir. 2008) (first citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); and then citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).
[25] *Favrot v. Favrot*, 68 So. 3d 1099, 1109 (La. Ct. App. 4 Cir. 2011) (citing *1436 Jackson Joint Venture v. World Constr. Co., Inc.*, 499 So. 2d 426, 427 (La. Ct. App. 4 Cir. 1986)).
[26] R. Doc. 101-5 at 1.
[27] R. Doc. 107 at 8.
[28] *Id.* at 15.

this specific evidence defeats the motion for summary judgment. Indeed, Courts are not like pigs, dispatched to hunt for promised truffles a party contends can be found if the Court endeavors to root and dig about the record in a quest to find that which the non-movant has failed to identify.[29] Plaintiffs' repeated nonspecific, vague, and general references to "all witness testimony cited" fail to satisfy Plaintiffs' obligation to point to specific evidence in the record.[30] Nor do Plaintiffs' footnotes citing to, but failing to explain the relevance or applicability of, sundry lists of depositions or "other cited evidence."[31] Moreover, while Plaintiffs point to their assertions in the Complaint that the system failed to work, these assertions are insufficient because Plaintiffs must go "beyond the pleadings and designate specific facts showing that there is a genuine issue for trial."[32]

Further, the depositions on which Plaintiffs rely do not support their claim that Topel failed to build a system with full functionality. For example, Wilbert Lynch, a Waterview Casino employee, testified that the system worked for a year with no problems at full functionality.[33] Plaintiffs' witness Felicia Hedrick, in her deposition, affirmed that as of mid-July 2022, the system was performing and "all was good."[34] Plaintiff Schlumbrecht, in his deposition, said that the "basic functions of the system were operable . . . ."[35] Plaintiffs point to no evidence in the record having any tendency to prove the system did not reach full functionality and did not pass state compliance requirements. Topel had thus completed his

---

[29] S*ee, e.g.*, *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.")
[30] R. Doc. 107 at 8.
[31] *Id.* at 11 nn. 13 & 14, 18 n.18.
[32] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[33] R. Doc. 107-2 at 5.
[34] R. Doc. 101-13 at 15.
[35] R. Doc. 101-12 at 9.

duties under the Employment Agreement: to work until the gaming system passed state compliance requirements and reached full functionality.

Plaintiffs assert that the system's need for updates and adjustments shows the system did not reach full functionality. That the system needed updates is immaterial, however, because Topel had already completed his obligations under the terms of the contract. Plaintiffs present no evidence suggesting that a need to update the software in 2021 was a breach of the contract or a failure of the system to reach full functionality. Further, the emails that Plaintiffs contend show the system required updates are from June 2022: seven years after the system passed the state compliance requirements and after Plaintiffs purport to have ended their relationship with Topel.[36] Plaintiffs have failed to produce any competent summary judgment material that creates any genuine dispute of material fact as to whether Topel failed to create a system that passed state regulatory requirements or reached full functionality. After Topel created a system that was fully functional and passed state regulatory requirements, he had completed his duties under the Employment Agreement. That the system eventually required input and updates does not negate Topel's performance of his obligation under the contract because the conditions of the contract were already satisfied.

As to the source code and the alleged efforts to sell the system, Plaintiffs again fail to create a genuine issue of material fact. Neither delivery of the source code to NTG nor a restriction on selling the product are terms of the Employment Agreement. Because it is axiomatic that one cannot breach a contract if the provision giving rise to the alleged breach is not a part of the contract, Plaintiffs cannot maintain a breach of contract claim arising out of

---

[36] R. Doc. 107-2 at 17; *see also* R. Doc. 107-3, at 11; R. Doc. 107-4, at 2.

Topel's alleged failure to comply with terms that are not actually in the contract. Further, even if this were a term of the contract, Defendants point to the deposition of Topel, in which he averred that he provided the source code to NTG on multiple occasions, an assertion that Plaintiffs failed to rebut. Plaintiffs failed to successfully carry their burden with respect to an issue, if it were actually an issue, on which they would have the burden of proof at trial. Indeed, Plaintiffs' response to the motion for summary judgment actually quotes Topel's deposition in which he affirmed that he provided the source code to NTG "several times."[37] Plaintiffs have also failed to point to any material in the record that shows that Topel tried to sell the system to a third party. Topel is a software designer who was working for NTG part-time; that he designed other software over the course of the business relationship does not show he was selling the system he created for Plaintiffs to third parties, and Plaintiffs point to no evidence to support that conclusion.[38] Plaintiffs have simply failed to show a genuine issue of material fact regarding whether their alleged, but unsupported, claim of failure to provide the source code or their alleged, but unsupported, claim of attempts to sell the system constitute a breach of contract.

Plaintiffs have not met their burden to point to competent summary judgment evidence to show a genuine dispute of material fact as to breach. As Plaintiffs have failed to carry their burden on an essential element of the claim, Defendants are entitled to summary judgment as a matter of law.

---

[37] R. Doc. 107 at 16. Plaintiffs' brief also states that "there is no credible evidence of breach as alleged by Plaintiffs for failing to deliver the source code."
[38] *Contra* R. Doc. 107 at 2.

### 2. Damages

While Plaintiffs' failure to meet their burden as to breach dooms their breach of contract claim, Plaintiffs also fail to meet their summary judgment burden as to damages. In their amended complaint, Plaintiffs allege specific dollar amounts for each casino from which they allege they lost revenue. Plaintiffs point to no competent summary judgment evidence, however, to support the alleged losses. In general, lost profits are calculated by deducting the costs of complying with a contract from the gross revenues that would have been derived from the contract.[39] Plaintiffs, however, provide absolutely no evidence regarding the expected gross revenues from the contract nor the costs of complying with the contract, precluding this calculation. The only evidence to which Plaintiffs point is Schlumbrecht's own deposition and declaration. Generally, a claim for lost profits "cannot rest solely on the testimony of the injured party without being substantiated by other evidence."[40] Indeed, Schlumbrecht admitted in his deposition that the damage calculations were based on his own "speculations."[41] Further, during Schlumbrecht's deposition, Plaintiffs offered to stipulate that the "losses for individual casinos" were "extrapolations" based on assumptions.[42] Outside of Schlumbrecht's claims in his deposition and declaration, Plaintiffs point to no law or evidence to support damages. The "lack of even a minimal degree of detail or specificity as to the extent of loss precludes an award."[43] Plaintiffs have failed to create a genuine issue of material fact as to damages, and Defendants are therefore entitled to summary judgment on Plaintiffs' breach of contract claim as a matter of law.

---

[39] *First Alarm Fire Equipment, Inc. v. Southland Intern.*, 114 So. 3d 1168, 1172 (La. App. 2 Cir. 2013).
[40] *Id.*
[41] R. Doc. 101-12 at 21.
[42] *Id.* at 26.
[43] *Jackson v. Lare*, 779 So. 2d 808, 814 (La. App. 2 Cir. 2000).

## B. Conversion

Under Louisiana law, a conversion is committed when "1) possession is acquired in an unauthorized manner; 2) the chattel is removed from one place to another with the intent to exercise control over it; 3) possession of the chattel is transferred without authority; 4) possession is withheld from the owner or possessor; 5) the chattel is altered or destroyed; 6) the chattel is used improperly; or 7) ownership is asserted over the chattel."[44]

Plaintiffs assert in the amended complaint that Topel attempted to market and sell the casino gaming system products to third parties, alleging that possession of the products were transferred without authority, and that Topel withheld possession of the gaming system code from Plaintiffs.[45] These assertions are insufficient, as Plaintiffs must go "beyond the pleadings and designate specific facts showing that there is a genuine issue for trial."[46]

Plaintiffs point to no evidence in the record beyond the amended complaint that creates a genuine issue of material fact as to whether Topel transferred possession of the gaming system or withheld the system from the owner. Instead, Plaintiffs simply quote in full the section of Defendants' motion for summary judgment on conversion.[47] The Court finds that there is no issue of material fact as to whether Topel or Atlas committed a conversion. Defendants are entitled to summary judgment on Plaintiffs' conversion claim as a matter of law.

---

[44] *Dual Drilling Co. v. Mills Equipment Investments, Inc.*, 721 So. 2d 853, 857 (La. 1998).
[45] R. Doc. 7 at 14.
[46] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[47] R. Doc. 107 at 18.

### C. Louisiana Unfair Trade Practices Act violations

The Louisiana Unfair Trade Practices Act ("LUTPA") prohibits egregious fraud, deception, or coercion.[48] The alleged conduct must offend public policy, and the "range of prohibited practices are extremely narrow."[49] LUTPA provides a private cause of action to a person "who suffers any ascertainable loss of money or movable property" because of another's use of "an unfair or deceptive method, act, or practice."[50] A trade practice is unfair under the statute "only when it . . . is immoral, unethical, oppressive or unscrupulous."[51] Courts determine what constitutes an unfair trade practice on a case-by-case basis.[52] The "unfair or deceptive methods" must occur "in the conduct of any trade or commerce."[53] Louisiana law defines "trade or commerce" as "the advertising, offering for sale, sale, or distribution of any services and any property . . . ."[54]

Here, Schlumbrecht and NTG point to no genuine issue of material fact to support any claim that Topel committed any act that was "immoral, unethical, oppressive or unscrupulous."[55] The mere recitation of Plaintiffs' breach of contract claim, including the words "fraud, misrepresentation, deceit and unethical conduct"[56] is not enough to defeat summary judgment on the LUTPA claim. There is a "great deal of daylight between a breach of contract claim and the egregious behavior" LUTPA proscribes.[57] Plaintiffs point to no competent summary judgment evidence that Topel committed any act that was immoral,

---

[48] *Cheramie Servs., Inc. v. Shell Deepwater Prod., Inc.,* 35 So. 3d 1053, 1060 (La. 2010).
[49] *Id.* at 1059-60.
[50] La. R.S. 51:1405(A).
[51] *Computer Mgmt. Assistance Co. v. Robert F. DeCastro, Inc.*, 220 F.3d 396, 404 (5th Cir. 2000).
[52] *Omnitech Int'l, Inc. v. Clorox Co.*, 11 F.3d 1316, 1332 (5th Cir. 1994).
[53] *Law Indus., LLC v. Dep't of Educ.*, 378 So. 3d 3, 8 (La. 2024).
[54] *Id.*
[55] *Computer Mgmt. Assistance Co.*, 220 F.2d at 404.
[56] R. Doc. 7 at 14.
[57] *Turner v. Purina Mills, Inc.*, 989 F.2d 1419, 1422 (5th Cir. 1993).

unethical, oppressive, or unscrupulous. Further, for the reasons discussed in the section on breach of contract damages, above, Plaintiffs have not provided competent summary judgment evidence of an "ascertainable loss."[58] One cannot declare that another engaged in an unfair trade practice and, on that conclusory incantation alone, hope to survive a motion for summary judgment. Because Plaintiffs fail to support essential elements of their claim, the Court grants Defendants' motion for summary judgment as to Plaintiffs' LUTPA claims.

### D. Fraud

A plaintiff bringing a claim for fraud under Louisiana law must prove the following elements: (1) misstatement or omission (2) of a material fact (3) made with the intent to defraud (4) on which the plaintiff relied and (5) which proximately caused the plaintiff's injury.[59] There is a heightened pleading standard for fraud claims: the plaintiff must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent."[60]

Plaintiffs assert that Topel's assurances that the system would run properly are misstatements or omissions of material fact. First, Plaintiffs' generalized assertions that Topel assured that the system would work or that the problems had been addressed do not rise to the level of required specificity.[61] Further, under Louisiana law, "[f]raud cannot be predicated on unfulfilled promises or statements as to future events,"[62] and thus the statements of "imminent success"[63] do not rise to the level of a fraudulent misstatement or omission.

---

[58] La. R.S. 51:1405(A).
[59] *Williams v. WMX Techs.*, 112 F.3d 175, 177 (5th Cir. 1997).
[60] *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008); *see also Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 551-52 (5th Cir. 2010).
[61] Plaintiffs instead provide citations to four depositions without specifying which precise statements Plaintiffs contend were fraudulent.
[62] *Johnson v. Unopened Succession of Alfred Covington, Jr.*, 969 So. 2d 733, 742 (La. App. 2 Cir. 2007).
[63] R. Doc. 107 at 22.

Second, Plaintiffs fail to carry their burden as to the third element, intent to defraud. Plaintiffs have pointed to no evidence that Topel and Atlas had an intent to defraud NTG and Schlumbrecht. A failure "to perform as promised . . . is not evidence of fraud."[64] Louisiana law is clear that "[t]he mere failure to do what one promises in order to induce another to sign a contract is not fraud but a mere breach of promise."[65] To hold otherwise would transform any claim for breach of contract into a fraud claim. There must be "an intent to defraud" to prove fraud.[66] Plaintiffs have pointed to no evidence showing that Defendants committed to the project intending to harm Plaintiffs.

Plaintiffs do not meet their burden as to the essential elements of a misstatement or omission and of intent to defraud. Defendants are thus entitled to summary judgment as a matter of law. Like Plaintiffs' LUTPA claim, Plaintiffs' purported fraud claim more closely resembles a breach of contract claim. Plaintiffs' assertion that its evidence shows "fraud, misrepresentation, deception, or other unethical conduct"[67] is not enough to avoid summary judgment. Accordingly, the Court grants Defendants' motion for summary judgment on Plaintiffs' fraud claim.

### E.  Detrimental Reliance

The elements of detrimental reliance under Louisiana law are: "1) representation by conduct or word; 2) justifiable reliance; and 3) a change in position to one's detriment because of the reliance."[68] The focus of the analysis is "whether a representation was made in such a

---

[64] *Taylor v. Dowling Gosslee & Assocs.*, 22 So. 3d 246, 255 (La. App. 2 Cir. 2009).
[65] *Johnson*, 969 So. 2d at 742 (citing *Dutton & Vaughan v. Spurney*, 600 So. 2d 693, 698 (La App. 4 Cir. 1992)).
[66] *Taylor*, 22 So. 3d at 255.
[67] R. Doc. 7 at 14.
[68] *Suire v. Lafayette City-Parish Cnsl. Gov't*, 907 So. 2d 37, 59 (La. 2005).

manner that the promisor should have expected the promisee to rely upon it, and whether the promisee so relies to his detriment."[69]

Defendants contend that Plaintiffs have not pointed to competent summary judgment evidence to support the elements of a representation and of a detrimental change in position. Plaintiffs' support for their detrimental reliance claim is that Plaintiffs relied on Topel to perform the contract and that his alleged failure to do so harmed their future profits and business relationships. For the reasons discussed above,[70] Topel completed his performance of the Employment Agreement.[71] Plaintiffs have further provided no competent summary judgment evidence of their alleged damages and thus no evidence of their detrimental change in position.[72] Defendants are thus entitled to summary judgment on Plaintiffs' detrimental reliance claim as a matter of law.

### F. Unjust Enrichment

Unjust enrichment requires a plaintiff to show: 1) an enrichment, 2) an impoverishment, 3) a connection between the enrichment and resulting impoverishment, 4) a lack of cause for the enrichment and impoverishment, and 5) that there is no other remedy available at law.[73] As to the fifth element, it is the "*existence* of other causes of action" that determines whether unjust enrichment can be applied.[74] The existence of a claim on a contract "precludes application" of unjust enrichment, because the potential contract claim is a practical remedy at law, whether or not the contract claim is successful.[75] Here, Plaintiffs have made a slew of

---

[69] *Id.*
[70] *See* Section III.A.
[71] *See* Section III.A.1.
[72] *See* Section III.A.2.
[73] *Minyard v. Curtis Prods., Inc.,* 205 So. 2d 422, 432 (La. 1967).
[74] *Garber v. Badon & Ranier*, 981 So. 2d 92, 100 (La. App. 3 Cir. 2008).
[75] *Id.*

claims, including a breach of contract claim, all based on the same underlying facts. As there

are other remedies available at law, Plaintiffs cannot bring an unjust enrichment action.[76] And,

in this case, even if Plaintiffs, who have alleged multiple causes of action, actually had no other

remedy available at law, they have failed to offer any viable summary judgment proof that

Defendants suffered an enrichment; that Plaintiffs suffered an impoverishment; or any

connection between these two, non-existent elements of their purported claim for unjust

enrichment. Defendants are thus entitled to summary judgment on Plaintiffs' detrimental

reliance claim as a matter of law.

### G. Negligent Misrepresentation

Under Louisiana law, the elements of a claim for negligent misrepresentation are:

> 1) the defendant, in the course of its business or other matters in which
> it had a pecuniary interest, supplied false information; 2) the defendant had a
> legal duty to supply correct information to the plaintiff; 3) the defendant
> breached its duty, which can be breached by omission as well as by
> affirmative misrepresentation; and 4) the plaintiff suffered damages or
> pecuniary loss as a result of its justifiable reliance upon the omission or
> affirmative misrepresentation.[77]

Here, like the fraud claim, Plaintiffs failed to identify specific false information that

Topel provided.[78] Similarly, Plaintiffs do not point to a specific or particular legal duty to

supply correct information to Plaintiffs in this case, or any facts or evidence to support any of

the other elements of this claim. Plaintiffs have thus failed to meet their burden regarding

essential elements of the negligent misrepresentation claim. Defendants are entitled to

summary judgment on Plaintiffs' negligent misrepresentation claim as a matter of law.

---

[76] *Id.*

[77] *Kadlec Med. Ctr. v. Lakeview Anesthesia Assocs.*, 2005 WL 1309153, at *3 (E.D. La. May 19, 2005).

[78] *See* Section III.D.

**H. Ripeness**

To the extent that Plaintiffs assert that the matter is not "ripe" for summary judgment, that claim is wholly without merit.[79] Defendants' motion for summary judgment here is not premature. Under Federal Rule of Civil Procedure 56(d), the Court may defer consideration of a motion for summary judgment if the opposing party shows by affidavit or declaration that it cannot present facts essential to justify its opposition.[80] Here, Plaintiffs have provided no affidavit or provided any indication as to how additional discovery would create a genuine issue of material fact. Discovery, which the Court had extended at Plaintiffs' request on more than one occasion, closed prior to the submission of this motion. The Court finds that a delay in considering Defendants' motion for summary judgment is not warranted.

**IV.    CONCLUSION**

For the foregoing reasons, the Motion for Summary Judgment, filed by Defendants Andrew V. Topel and Atlassoftwareservices,[81] is GRANTED. The Court hereby DISMISSES Plaintiffs' claims WITH PREJUDICE.

New Orleans, Louisiana, this 18th day of February, 2026.

**DARREL JAMES PAPILLION**
**UNITED STATES DISTRICT JUDGE**

---

[79] R. Doc. 107, at 4.
[80] Fed. R. Civ. P. 56(d).
[81] R. Doc. 101.